# Wilcox *v.* Snyder, Appellant.

*Land law—Boundaries—Calls—Lake as a boundary—Survey— Warrants —Evidence.*

In an action of ejectment where the defendant's case depends on his establishing the existence of vacant land between the west line of a survey and a lake, and the survey and warrant offered in evidence by the defendant himself shows a beginning of the survey at its southwest point on the lake itself, and a final call for a stake on the edge of the lake at the northwest corner, and the defendant offers no evidence whatever of any marks or monuments on the ground to establish a west line other than the bank of the lake, a verdict and judgment for the plaintiff will be sustained.

Where the appellant in a judgment in ejectment fails to print the warrant or return of survey which he offered in evidence, the appellate court will assume that what the court below said in regard to the warrant and survey was true.

*Ejectment—Return of writ—Evidence.*

Where the defendant in an ejectment testifies himself that he was in possession of the premises in dispute at the institution of the suit and the service of the writ, it is harmless error, if error at all, for the court to permit the return of the writ of ejectment sworn to by the deputy sheriff to be read in evidence.

Argued Jan. 16, 1903. Appeal, No. 47, Jan. T., 1903, by defendant, from judgment of C. P. Luzerne Co., March T., 1900, No. 43, on verdict for plaintiff in case of Chester G. Wilcox and Mary C. Wilcox v. George Snyder. Before BEAVER, SMITH, W. W. PORTER, W. D. PORTER and MORRISON, JJ. Affirmed.

Ejectment for lot of land about fifty feet square on the inlet of Harvey's lake in Lehman township. Before WHEATON, J.

At the trial the defendant claimed that the land in controversy was vacant land situated between the west line of the William Nichols survey and the bank of Harvey's lake.

The William Nichols survey, offered in evidence by defendant, called for the lake at its southwest and northwest corners.

The court under objection and exception admitted in evidence the return of the writ of ejectment sworn to by the deputy sheriff. [1]

Mr. Gates: I propose to prove by the witness, Thos. McMillan, a surveyor, that this survey is a survey of all the Wil-

liam Nichols tract and that the location of the line in dispute, that is west of the line of the William Nichols tract, does not include the land in dispute in the William Nichols tract, that it is entirely off of it, that it is not only off of this tract, but in Lake township. Also, further to prove that it is a piece of vacant land situated between the William Nichols, that this land in dispute is upon a piece of vacant land between the William Nichols and a patent, the lines of which run somewhere out into the lake.

Mr. Powell : We object to this offer on the grounds, first, that the William Nichols warrant and return of survey call for Harvey's lake upon the west, and that this testimony having a tendency to contradict the call must give way to the call—in other words, that the call governs, and that this tract must be construed by the court as bounded upon the west by Harvey's Lake ; second, that the offer as stated is in effect an effort to contradict and annul the act of assembly of 1849 ; third, that the offer is immaterial, because, whether the land in dispute is located on the William Nichols warrant or is vacant land between that and a warrant in the lake, the plaintiffs, having offered abundant testimony to establish title by possession for a number of years, which would give them a title as against the commonwealth so far as this case is concerned, the only question now is : Have they established their possession ?

The Court : It appearing to the court by the evidence of the return of survey of the Williams Nichols tract offered by the defendant in this case, that the William Nichols warrant is so laid as to be situated on the east bank of a large lake on the head of Harvey's creek, and that from an inspection of the location thus made by the return of survey the William Nichols warrant is bounded by the waters of Harvey's lake ; and the court believing that the rules for the construction of location are that they must be judged of by what appears on their face and that they cannot be explained by parol evidence on the part of the claimants or the declarations of the land officer or of the applicant as to what land was meant to be embraced ; and the court further states that even if it be conceded that the warrant in this case is indescriptive and vague, nevertheless it was reduced to a certainty by the location of it by the return of survey offered by the defendant in this case, the

court is of the opinion that evidence is shown that there was vacant land between the William Nichols warrant and Harvey's lake is incompetent and irrevelant. The objection, therefore, on that ground is sustained, exception noted and bill sealed for defendant. [2]

Mr. Gates : We propose to show by the witness on the stand (the surveyor, James McMillan) that he has located the corners, the original corners, the white oak corner that is spoken of, the southwest corner of the Williams Nichols, the hemlock corner spoken of by the witness on the stand on the part of the plaintiff, also the post corner by measurements near the bank of the lake, making all the measurements clear around the inlet; that he has also located the line south five degrees, west 200 perches and found the hemlock stump, the original corner, at the end of that course, and that the line from there extended from that hemlock to the closing line, the southwest corner of the tract being across the inlet, does not include the land in dispute. We further propose to prove that there are 428 acres of land in the tract as shown by the surveys, the corners and marks on the ground, leaving out the land in dispute. That is, that there is the full call, which, of course, is not conclusive but is a point in the case.

Mr. Powell : Objected to as immaterial and irrelevant and governed by the former rulings of the court.

Mr. Gates : The purpose of the offer is to show that we have not any of their land, to show that this land that we have is not part of the William Nichols, nor part of their land, but is a vacant strip of land from the hemlock to the southwest corner, about thirty-five or forty rods, going along the inlet; that there is there a strip of land between the lake and the William Nichols that is not covered by the William Nichols survey or the William Nichols warrant.

The Court : It appearing to the court that the return of survey shows definitely on its face that there is no strip of land on the west side of the William Nichols warrant and Harvey's lake, the objection is sustained and the evidence is excluded. Exception noted for defendant and bill sealed. [3]

The court charged, inter alia, as follows :

[Gentlemen if you believe the witnesses here on the part of

the plaintiff that James Myers and his daughter and her mother had for more than thirty years continuous possession of this strip of land in dispute, evidenced by fencing it, using it for pasturing, and by other open and notorious acts of ownership upon it, and if you also believe the testimony of Mr. Hartwell that this land is within the deed granted by Harman Ide and his wife and Mrs. Myers to Chester Wilcox and his wife, then you should find a verdict for the plaintiffs in this action, and you would only be justified in finding a verdict for the defendant in this case if you disbelieve their testimony.] [7]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (7) portions of charge as above, quoting it.

*Q. A. Gates*, with him *William A. Millard* and *W. A. Mc-Alarney*, for appellant.—The marks on the ground of an old survey indicating the lines originally run are the best evidence of the location of the survey and if any evidence of such lines exist it should be referred to the jury: Younkin v. Cowan, 34 Pa. 198; Gratz v. Hoover, 16 Pa. 232; Walker v. Smith, 2 Pa. 43; French Glenn Live Stock Co. v. Springer, 185 U. S. 47; Wharton v. Garvin, 34 Pa. 340; Kelly v. Graham, 9 Watts, 116; Salmon Creek Lumber, etc., Co. v. Dusenbury, 110 Pa. 446; Grier v. Penna. Coal Co., 128 Pa. 79.

*George K. Powell*, for appellees.—Where lines are not actually run and marked on the ground, the survey is to be carried to its calls of adjoiners, even though it overruns the distances returned on the survey: Younkin v. Cowan, 34 Pa. 198; Ake v. Mason, 101 Pa. 17; Wharton v. Garvin, 34 Pa. 340; Klingensmith v. Ground, 5 Watts, 458.

OPINION BY MORRISON, J., March 12, 1903:

The numerous assignments of error in this case really raise but two important questions. First, does the west line of the William Nichols warrant and survey extend to the lake? In other words, is the east line of the lake the west line of the William Nichols warrant? If under the evidence in the case and the offers which were rejected, this question can be an-

swered in the affirmative, then the defendant had no case and has no cause of complaint, because if there was no vacant land between the west line of the Nichols warrant and the lake, it is not contended by the defendant that any injustice was done him.

The second question raised is this : if the west line of the Nichols tract did not extend to the lake and there was a vacant piece of land between the true west line of this tract and the lake, had it been in the possession and occupancy of the plaintiffs and those under whom they held for more than thirty years ? If the first question should be determined against the plaintiffs, the verdict and judgment can be sustained on the second proposition if it was properly submitted to the jury.

It seems to us very clear that the William Nichols warrant as surveyed and returned to the land office is bounded on the west by the lake. The survey begins at the lake and runs east 273 perches to a white oak; thence north 235 perches to a hemlock; thence west 280 perches to a post in the edge of the lake. No question is raised as to the location of the white oak, the southeast corner and the hemlock, the northeast corner of the Nichols lot. The warrant and survey calls for the lake and there is no evidence of any monuments or marks upon the ground which would fix the line east of low water mark of the lake.

The plaintiffs having made a prima facie showing which would warrant the jury in finding that the edge of the lake by its various courses and distances was the west line of the Nichols warrant, and having gone farther and proved by at least five several witnesses an open, notorious and continuous possession of the land in dispute for more than thirty years, prior to the commencement of the suit, by the plaintiffs and those under whom they claim title, and having proved the possession of the defendant at the time of bringing suit rested. The defendant then put in evidence a certified copy of the William Nichols survey, and as we understand it this survey clearly shows that the Nichols warrant was bounded on the west by the lake. The defendant also offered the warrant from the commonwealth for the William Nichols tract. This warrant and survey put in evidence by the defendant, located the Nichols tract so that the west line of it was identical with the

east line of Harvey's lake. The defendant then called a surveyor and proposed to show by parol evidence of a recent survey that the Nichols warrant did not go to Harvey's lake, thus he was seeking to contradict the warrant and survey which he had put in evidence, for the purpose of convincing the jury that there was vacant land between the Nichols lot and the lake. He did not propose to show that there were any original marks on the ground on or along the west line of the Nichols warrant, as he proposed to locate it, which would affect or control the calls for the lake. As was well said by the learned court below : " In the absence of a marked line on the ground the courses and distances would be controlled by the call for the lake, and that would be so even if the distances of the north and south lines of the Nichols warrant had to be extended to reach the call. This case is not within the principle that the lines marked on the ground control the return of the surveyor, even where that calls for a natural or other fixed monument. It is within the principle that a call for an adjoinder will overrule the line returned by courses and distances where there are no lines upon the ground. It was immaterial, therefore, even if true, that a survey by courses and distances, ignoring the call for the lake, would locate the west line of the Nichols tract at some point other than the lake.

" But entirely apart from this question the plaintiff's case rested upon proof of a continuous possession of the land in dispute, in himself and those from whom he derived title, for a period of nearly fifty years, a continuous possession for more than thirty years prior to the inception of the title from the commonwealth upon which the defendant relied. The evidence of such continuous possession, and the evidence in behalf of the defendant upon this point was submitted to the jury who found for the plaintiff."

" Where there has been a continuous possession of lands or tenements for thirty years, it shall be presumed, as betwen the parties litigant, other than the commonwealth, that the title thereof shall have been parted with by the commonwealth:" Act of April 27, 1855, section 6, P. L. 368, Purdon, page 1211.

The learned court further says : " Now, whether the land in dispute is part of the William Nichols warrant or not, the jury having found as a fact,—and the evidence warranted the finding,

—that the plaintiff and his predecessors in title have had continuous possession of it for more than thirty years before the inception of defendant's claim, the presumption of title out of the commonwealth arises, and it is a presumption juris et de jure."

The weakness of the defendant's case is that the record shows that he proved the west line of the Nichols lot and the east line of the lake to be identical. He then attempted to prove that this was not a fact by showing that a survey had been made which gave the Nichols tract its entire quantity of land 400 acres and allowance, and yet left a piece of vacant land between the Nichols lot and the lake. In attempting to do this he was in conflict with a long line of cases which hold in effect that he could not establish the west line of the Nichols lot away from the lake as against the calls in the survey, unless he could show actual lines or monuments on the ground. This he did not propose to do. The appellant cites Wharton v. Garvin, 34 Pa. 340, in support of his contention that the west line of the Nichols lot need not go to the lake, but we think this case is decidedly against his contention. This case holds that " generally, a survey is to be carried to its calls, unless there are actual lines on the ground excluding them. In that case the lines on the ground will control the calls, for they constitute the survey. But when there are no natural monuments or lines called for, by which the closing line is to be fixed and ascertained, and no line on the ground, it follows of necessity, that the survey is to be closed by a direct line between the termini of the lines on the ground or as fixed by the courses and distances returned, to ascertain these termini. It was ascertained, in this case, that the north and south boundaries, by their courses and distances, did not reach the river by the number of rods already stated. And if we are to discard the river as a call, then the west boundary must necessarily be closed by a straight line from point to point of the side lines. There is no other process by which it may be done. A call, to stand as a boundary, must be indicated to be such with sufficient certainty to show that it was so intended."

Now in the above case it clearly appears that the survey and warrant did not call for the river as the west boundary of the

lot. " The survey, as returned, did not exhibit a protraction to the river, and the closing or west line as proposed by the draft, was a straight line 238 perches long ; leaving a vacant strip, the land in controversy, apparently excluded from the survey."

In the case under consideration the southwest corner calls for the lake as does the northwest corner and there is no straight line drawn from one of these points to the other. Therefore the conclusion is inevitable that the survey is to be closed on the west by running from one of these points along the edge of the lake to the other, and this absolutely excludes the idea of any vacant land lying between a line so established and the lake.

Complaint is made that the court permitted the return of the writ of ejectment sworn to by the deputy sheriff to be read in evidence. In view of the fact that the defendant took the stand and proved that he was in possession of the premises in dispute at the institution of the suit and the service of the writ, no harm was done by allowing the return to be read in evidence. The defendant was in possession and was contending for the right of possession, and it does not come with very good grace for him to complain that incompetent evidence of his possession was offered by the plaintiff and received by the court. If he had offered no evidence of his possession, and the only evidence of it had been this return, it might have been proper for the defendant to urge that the return sworn to by the deputy sheriff was incompetent evidence. But whether it was or not is not now decided.

The appellant seemed to attach considerable importance to a hemlock said to have been found on the west line of the Nichols lot and the claim is made that this would establish this line east of the line of the lake. The appellant has not printed in his paper-book the warrant and return of survey which the record shows he offered in evidence. We have been furnished, however, a copy of the survey certified by the secretary of internal affairs. This shows a hemlock in the west line of the Nichols tract, but it appears to stand in the edge of the lake, and it is perhaps forty rods north of the land in dispute. Therefore, we are of the opinion that there was no error in the ruling of the court in regard to this hemlock. There is nothing in the record to show that the west line of the Nichols lot could have

been changed from the east line of the lake by this hemlock. Even if it does not stand in the edge of the lake it is difficult to see how it would change the line at the point of location of the land in dispute.    There can be no question about the south-west corner, the one near the land in dispute being in the edge of the lake.

The appellant having failed to print the warrant and return of survey, which he offered in evidence, we assume what the court below says in regard to the warrant and survey to be true.

A careful examination of the evidence leads us to the conclusion that the case was well tried and a just conclusion reached.    And, therefore, the assignments of error are all dismissed and the judgment affirmed.